Argued and submitted March 4, reversed and remanded May 1, 1985

CROSBY,
*Appellant,*

*v.*

SAIF CORPORATION et al,
*Respondents.*

(A8210-06682; CA A32642)

699 P2d 198

Robert K. Udziela, Portland, argued the cause for appellant. With him on the brief were John S. Stone, and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Philip Schradle, Assistant Attorney General, Salem, argued the cause for respondent SAIF Corporation. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Anna M. Moran, Portland, argued the cause for respondent W. G. Moe & Sons, Inc. With her on the brief was Breathouwer & Gilman, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff suffered an on-the-job injury while he was employed by defendant W. G. Moe & Sons, Inc., and, as a result, he was entitled to workers' compensation benefits from defendant SAIF. Plaintiff alleges that

"* * * representatives of the two defendants met and agreed that defendant Moe would create a light duty job for the plaintiff so that workers' compensation benefits would no longer be payable to the plaintiff. The defendants further agreed that after the plaintiff commenced his light duty job he would be discharged from his employment."

Plaintiff pleaded three claims: first, that both defendants engaged in a civil conspiracy against him; second, that SAIF interfered with his contractual relationship with Moe; and, third, that the conduct of both defendants was outrageous. The trial court dismissed the complaint as to SAIF on the ground "that plaintiff has failed to state a claim for relief." The court dismissed the action as to Moe on the ground "that plaintiff's sole and exclusive remedy for the acts alleged to have been performed by defendant Moe are [sic] set forth within ORS Chapter 659." Plaintiff appeals, and we reverse.

Both defendants argue that plaintiff's action was properly dismissed, because the gravamen of his complaint is that he was discharged for filing a workers' compensation claim, see ORS 659.410, 659.415, and that ORS chapter 659 provides either his exclusive remedy or a remedy that precludes the specific claims in his complaint. Defendants' argument is adversely answered by *Holien v. Sears, Roebuck and Co.*, 298 Or 76, 689 P2d 1292 (1984), and *Carsner v. Freightliner Corp.*, 69 Or App 666, 688 P2d 398, *rev den* 298 Or 334 (1984). SAIF concedes in its brief that under *Holien* "plaintiff's claims are not totally precluded because of remedies available to plaintiff under ORS Ch. 656 and ORS Ch. 659." SAIF nevertheless argues that,

"* * * to the extent that plaintiff's claims are based on any allegations that plaintiff was *discharged because* he filed a Workers' Compensation claim, then plaintiff's remedies exist solely under ORS Ch. 659 even under the reasoning of [Holien]." (Emphasis SAIF's.)

■    We disagree with that understanding of the allegations. Plaintiff does not plead that he was terminated

because he filed a claim; he alleges that defendants conspired to divest him unlawfully of his right to workers' compensation benefits and to terminate him. We do not suggest that plaintiff *could not* have pursued a remedy under ORS 659.121 for a violation of ORS 659.410 on the basis of the facts alleged. However, the unlawful conduct for which he *does* seek relief goes beyond the conduct that ORS 659.410 proscribes. *See Carsner v. Freightliner Corp., supra,* 69 Or App at 672-74.

■ SAIF argues that there are a number of alternative bases for sustaining the trial court's orders.[1] It contends, first, that plaintiff does not adequately allege that he gave SAIF the tort claim notice required by ORS 30.275. Plaintiff alleged:

"Prior to the commencement of this action, the plaintiff has advised defendant SAIF of his claim in the manner prescribed by Oregon law."

Assuming that the allegation is insufficient, SAIF's motion pertaining to *that* allegation asked that it be made more definite and certain, not that the action be dismissed because of it. SAIF made the appropriate motion, but, for that reason, it is wrong now in contending that any defect in the notice allegation is a basis for dismissing the action.[2] *See Shaughnessy v. Spray,* 55 Or App 42, 50-51, 637 P2d 182 (1981), *rev den* 292 Or 589 (1982).

SAIF contends next that its alleged acts are discretionary governmental acts and that it is therefore immune from suit under ORS 30.265(3)(c). SAIF reasons:

"* * * [T]he purportedly tortious conduct alleged by plaintiff is that SAIF Corporation worked with plaintiff's employer to make a light duty work position for plaintiff. SAIF was created for the purpose of transacting workers' compensation insurance and reinsurance business. ORS 656.752(1). One of SAIF's functions is to 'receive and handle and process the claims of workers.' ORS 656.752(2)(b). Oregon Administrative Rules 436-61-010(3)(g)(A) and 436-61-050(8) provide for insurers at their discretion to work with the employer of an injured worker in the creation or modification of jobs to provide a sheltered atmosphere for the injured worker to

---

[1] Moe does not join in SAIF's alternative arguments.

[2] The parties do not advise us how the trial court resolved the motion against the notice allegation. The court may well have regarded a ruling superfluous in view of the fact that it dismissed the action on other grounds.

return to 'light work.' Although plaintiff would consider it desirable that he receive Workers' Compensation benefits without working, even assuming plaintiff's allegations to be true, SAIF made a policy decision to encourage plaintiff's employer to create a light duty job for plaintiff. * * *

"Plaintiff, of course, further alleges that SAIF Corporation and defendant W.G. Moe & Sons, Inc., agreed that, after plaintiff commenced his light duty job, plaintiff would be discharged. However, it is axiomatic that plaintiff's employer was the party which made hiring and firing decisions regarding plaintiff and plaintiff has not alleged any facts which show that SAIF Corporation did have or even could have affectuated plaintiff's termination from employment with defendant W.G. Moe & Sons, Inc."

■ SAIF again misses the thrust of the allegations. The fact that Moe had the hiring and firing authority is irrelevant to whether SAIF conspired with Moe to exercise that power for an unlawful purpose. Whether or not we would agree with SAIF that its working with employers to find job placements for injured employes is immune as discretionary, we conclude that SAIF's conspiring with an employer, *inter alia,* to eliminate a worker's entitlement to benefits is not a matter of discretion. Whether SAIF did only what it says it did or did what plaintiff alleges is a jury question. For purposes of reviewing the dismissal of the complaint, we must assume the truth of plaintiff's allegations. SAIF cites no authority for the proposition that intentional torts that involve unlawful conduct can be immune under ORS 30.265(3)(c). We hold that the torts alleged here are not insulated by discretionary acts immunity.

■■ SAIF's next argument is that plaintiff did not state a claim for relief for civil conspiracy because

"* * * civil conspiracy is not itself an independent tort, and plaintiff has not pled the violation of any statute by SAIF Corporation or the violation by SAIF Corporation of any common-law duty owed to plaintiff. Plaintiff's complaint, as discussed above, does not state how plaintiff's discharge was in any way unlawful. Moreover, any alleged agreement between SAIF Corporation and plaintiff's employer to create a 'light duty' position for plaintiff is completely authorized by statute and regulation and is eminently proper. * * *"

SAIF relies on *Bonds v. Landers,* 279 Or 169, 566 P2d 513

(1977). The reliance is misplaced. Although *Bonds* does state that "[a] civil conspiracy is not an independent tort, in the absence of a statute or unusual circumstances," the opinion goes on to explain that "[t]he damage in a civil conspiracy flows from the overt acts and not from the conspiracy." 279 Or at 175. We do not share SAIF's understanding that a conspiracy, the overt acts of which *have* produced damage, is not actionable. SAIF makes a number of other points in support of its argument that the civil conspiracy claim was properly dismissed. We do not find any of them meritorious.

■       SAIF cites *Top Service Body Shop v. Allstate Ins. Co.,* 283 Or 201, 582 P2d 1365 (1978), as authority for its next argument, that plaintiff failed to state a claim against SAIF for intentional interference with contract. The court stated in *Top Service Body Shop:*

> "* * * [A] claim is made out when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself. Defendant's liability may arise from improper motives or from the use of improper means. They may be wrongful by reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession. * * *" 283 Or at 209-10. (Footnote omitted.)

The operative allegations in the interference with contractual relationship claim are that "plaintiff was hired by Moe," "SAIF * * * intentionally interfered with the plaintiff's employment contract for the purpose of eliminating [its] responsibility to pay workers' compensation benefits" and, as a result, "plaintiff was terminated by his employer" and suffered damages. We do not see how those allegations can be read as not satisfying the "improper motives" test of *Top Service Body Shop.*

SAIF also states:

> "Plaintiff's complaint under [the] second cause of action nowhere states how SAIF Corporation allegedly interfered with plaintiff's employment contract which purportedly exists between plaintiff and plaintiff's employer. Plaintiff's failure to plead how SAIF Corporation allegedly interfered with plaintiff's contractual relationship defeats entirely plaintiff's claims under this cause of action. Plaintiff alleges no facts which would constitute any interference. * * *

"* * * * *

"* * * [P]laintiff's complaint does not even allege the existence of an employment contract between defendant W. G. Moe & Sons, Inc. and plaintiff or between SAIF Corporation and plaintiff. Plaintiff's complaint certainly does not state the type of employment contract, if any, which plaintiff may have had with defendant W. G. Moe & Sons, Inc. The type of employment contract involved would be of great import to this case, because the contract, if one exists, may contain language which makes plaintiff an employe terminable at the will of the employer. In fact, absent statutory or contractual rights to the contract, an employer generally may discharge an employe at any time with or without cause. * * *"

In our view, SAIF is simply mistaken in its contention that *no* employment contract was pleaded. The remaining points it makes either fault the complaint for failing to plead evidence or deal with matters that might be subject to a motion to make more definite and certain. SAIF's argument does not provide a basis for affirming the dismissal of the claim.

SAIF's final argument is that the complaint does not state a claim for outrageous conduct. Many of the points relate to the specificity of the complaint or duplicate points SAIF makes in connection with its other arguments. For reasons similar to those we have noted earlier, we find them unpersuasive as grounds for dismissal.

SAIF also asserts that plaintiff has not alleged that a "special relationship" exists between it and plaintiff sufficient to support a claim for outrageous conduct. *See Bodewig v. K-Mart, Inc.,* 54 Or App 480, 485-87, 635 P2d 657 (1981), *rev den* 292 Or 450 (1982), and authorities there cited. We disagree. Plaintiff has alleged that SAIF is the workers' compensation carrier responsible for the payment of plaintiff's benefits. If a special relationship is necessary to support a finding of outrageous conduct here, *compare Brewer v. Erwin,* 287 Or 435, 458, 600 P2d 398 (1979), *and Rockhill v. Pollard,* 259 Or 54, 485 P2d 28 (1971), *with Turman v. Central Billing Bureau,* 279 Or 443, 568 P2d 1382 (1977), we hold that there can be a special relationship between a workers' compensation insurer and a person entitled to benefits from the insurer. *See* ORS 656.012(2).[3]

---

[3] The Supreme Court recently noted in *Humphers v. First Interstate Bank,* 298 Or

Reversed and remanded.

---

706, 709, n 1, 696 P2d 527 (1985):

> "This court has attempted, so far unsuccessfully, to discourage the idea that there is a general tort of 'outrageous conduct,' partly because the phrase misleadingly suggests potential recovery of damages whenever someone's conduct could be said to deserve this epithet. *See Hall v. The May Dept. Stores,* 292 Or 131, 134-37, 637 P2d 126 (1981); *Brewer v. Erwin,* 287 Or 435, 454-57, 600 P2d 398 (1979); and see *id.* at n 13, citing the court's dissatisfaction with the epithets in *Rockhill v. Pollard,* 259 Or 54, 60, 485 P2d 28 (1971). Plaintiff in this case actually alleged the factual elements of intentional or reckless infliction of severe emotional distress as well as 'outrageous' conduct."

We do not understand that footnote to support or require the dismissal of claims simply because the complaint *describes* them as being for "outrageous conduct."