NORMAN FALLINE AND SHARON FALLINE, APPELLANTS, v. GNLV CORP., A NEVADA CORPORATION DBA GOLDEN NUGGET HOTEL & CASINO, GIBBENS COMPANY, INC., A NEVADA CORPORATION, RESPONDENTS.

No. 20549

December 31, 1991                    823 P.2d 888

*Greenman, Goldberg, Raby & Martinez,* Las Vegas, for Appellants.

*Beckley, Singleton, DeLanoy, Jemison & List* and *Daniel F. Polsenberg,* Las Vegas, for Respondent Gibbens Company, Inc.

*Hunterton & Naylor* and *Cindy Lee Stock,* Las Vegas, for Respondent GNLV Corp.

*Badger & Baker,* Carson City, for Amicus Curiae.

## OPINION

By the Court, STEFFEN, J.:

Appellants Norman and Sharon Falline sought to maintain common law or private causes of action against respondents GNLV Corporation (Golden Nugget), a self-insured employer, and Gibbens Company, Inc. (Gibbens), the administrator of Golden Nugget's self-insured plan. The causes of action included claims for negligence and bad faith in the processing and payment of claims, intentional and negligent infliction of emotional distress, unfair insurance practices, and other claims which will not be specifically addressed in this opinion. We conclude that the district court erred in dismissing two of appellants' claims, and therefore reverse and remand as to those claims.[1]

At the age of twenty-five, appellant Norman Falline (Falline) injured his back while working as a maintenance laborer at the Golden Nugget. The injury eventually required surgery. Approximately ten weeks after surgery, Falline experienced severe pain

---

[1]All of appellants' causes of action were dismissed with the exception of their claim for wrongful termination which is still pending below.

in his lower back as he arose from a sitting position. An examining physician determined that there was no new injury and concluded that Falline's initial surgery left him prone to reinjury. The physician recommended treatment for the acute problem and determined that Falline was temporarily totally disabled. Based upon the physician's findings and recommendations, Falline sought to have his claim reopened. Despite the doctor's report, Gibbens and the Golden Nugget denied further liability, stating that Falline had suffered an intervening injury.

Falline appealed respondents' rejection of his claim to a hearing officer, who ruled in favor of reopening the claim and paying benefits. Respondents thereafter appealed to an appeals officer who also ruled in Falline's favor. Subsequently, respondents sought judicial review, but the district court upheld the decision of the appeals officer and ordered the insurer to pay both accident and compensation benefits. Respondents' appeal to this court was dismissed by order filed on June 26, 1986. Stay orders sought by respondents from the district court and this court were also denied.

After Falline was released to return to work, his employment was terminated about three months later. Rehabilitation benefits were subsequently refused by respondents, despite a hearing officer twice ruling that Falline was entitled to such benefits.

Appellants first contend that the district court erred in dismissing their cause of action for the negligent or bad faith delay in the payment of workmen's compensation benefits. We agree. In our recent opinion in Northern Nev. Ass'n of Injured Workers v. Nevada State Indus. Ins. Sys., 107 Nev. 108, 807 P.2d 728 (1991), we reaffirmed our ruling in Rush v. Nevada Industrial Commission, 94 Nev. 403, 580 P.2d 952 (1978), holding that a claimant could maintain a cause of action against the State Industrial Insurance System (SIIS) under a common law negligence theory because SIIS was a third party separate and apart from the employer. We now conclude that there is no rational basis for permitting such an action against SIIS, which is funded by contributions from employers, and denying the same right of action against administrators of self-insured plans which are also funded by employers. In both instances, "administrators" are obligated to promptly, fairly, and in good faith, process and pay where warranted, compensation benefits to injured workers. Moreover, it makes no difference whether a self-insured plan is administered by the self-insured employer or an agent employed for that purpose. Although Nevada law (NRS 616.2947) imposes liability on a self-insured employer for *penalties* resulting from the derelictions of the administrator/agent, there is no sound reason why

a self-insured employer should not be liable for damages resulting from the negligent or bad faith administration of the self-insured plan by the administrator/agent. There are cogent reasons for concluding that such liability would not constitute an erosion of the employer's immunity from common law liability for work-related injuries under NRS 616.272(2). First, the basis for liability is not the industrial injury upon which the workmen's compensation claim is based, but rather the negligent or bad faith failure or refusal to timely pay the compensation due. Second, the self-insured employer who relies on a fair, efficient, and lawful administration of the self-insured plan by an administrator/agent, and suffers damage by the latter's breach of duty, may seek indemnification from the administrator/agent for such damages assessed against the self-insured employer. *See, e.g.,* Salt Lake City School District v. Galbraith & Green, Inc., 740 P.2d 284 (Utah Ct.App. 1987). Third, it would unfairly discriminate against employees of a self-insured employer to disallow an action for damages resulting from the negligent or bad faith failure or refusal to timely pay compensation entitlements while allowing a similar action against SIIS by employees of employers who are not self-insured.[2]

Although Falline properly exhausted his administrative remedies, the record reflects that while administrative and judicial remedies were pursued, he was denied compensation benefits during two intervals that were each approximately six months in duration. During these periods, Falline claims that he and his wife were forced to borrow money, sell their automobile and request the help of relatives.

Our case law strongly emphasizes that one of the obligations of a self-insurer "is the prompt payment of benefits, and if payment is determined to be unwarranted, the self-insurer must seek reimbursement of benefits it paid." Imperial Palace v. Dawson, 102 Nev. 88, 92, 715 P.2d 1318, 1320 (1986) (quoting Dep't Ind. Relations v. Circus Circus, 101 Nev. 405, 411-12, 705 P.2d 645, 649 (1985)). Under our rulings, respondents' vexatious and dilatory withholding of Falline's compensation cannot be condoned. Nevertheless, there is another consideration that must be

---

[2]By a parity of reasoning, it would be equally discriminatory against self-insured employers to permit injured workers to seek punitive damages against the self-insured employer or its administrator/agent when we have expressly disallowed such damages in actions against SIIS and its employees. *See Northern Nev. Ass'n of Injured Workers,* 107 Nev. at 111, 807 P.2d at 730 n.5, (citing Rush v. Nevada Indus. Comm'n, 94 Nev. 403, 580 P.2d 952 n.5 (1978)), for its holding that punitive damages are unavailable in actions involving negligent or malicious claims processing. Punitive damages are therefore precluded in this type of action against self-insured employers and their administrators/agents.

addressed in determining whether Falline has a right of action against respondents.

Our ruling in *Northern Nev. Ass'n of Injured Workers, supra,* recognized that under Nevada law, NRS 41.032, the liability of SIIS and its employees for negligent acts is limited to acts that are of an operational, rather than discretionary, nature. Although statutory immunity for discretionary acts is accorded only to governmental agencies and employees, we have determined that a denial of such immunity to self-insured employers and their administrators/agents would constitute an unwarranted, discriminatory source of liability against the latter. We therefore hold that self-insured employers and their administrators/agents are liable for negligent claims processing only to the extent that such processing constitutes what would be properly classified as an operational decision if made within the State Industrial Insurance System. In that connection, however, we also hold that if failure or refusal to timely process or pay claims is attributable to bad faith, immunity does not apply whether an act is discretionary or not.

Bad faith, the converse of good faith, has been defined as "the absence of a reasonable basis for denying benefits . . . and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." Franks v. United States Fidelity & Guar. Co., 718 P.2d 193, 197 (Ariz.Ct.App. 1985) (quoting Noble v. National Am. Life Ins. Co., 624 P.2d 866 (1981); Anderson v. Continental Ins. Co., 271 N.W.2d 368 (Wis. 1978)); 2A A. Larson, *The Law of Workmen's Compensation* § 68.34(c) at 13-144 (1987 & Supp. 1990). Neither SIIS nor a self-insured employer or its administrator/agent has discretion to act in bad faith, i.e., without a reasonable basis or with knowledge or reckless disregard of the lack of a reasonable basis in the processing or denial of claims. It follows, therefore, that any act involving the processing of claims committed or performed in bad faith cannot, by definition, be within the actor's discretion.[3]

---

[3]We realize that NRS 41.032(2) provides immunity to contractors, officers,. employees, agencies and political subdivisions of the State for the performance or non-performance of discretionary acts *"whether or not the discretion involved is abused."* (Emphasis supplied.) However, an abuse of discretion necessarily involves at least two factors: (1) the authority to exercise judgment or discretion in acting or refusing to act on a given matter; and (2) a lack of justification for the act or inaction decided upon. Bad faith, on the other hand, involves an implemented attitude that completely transcends the circumference of authority granted the individual or entity. In

Respondents contend that the legislative scheme for sanctioning self-insurers who violate their obligations to injured workers, coupled with the availability of additional sanctions imposed by the judiciary in the form of interest, costs and attorney's fees, constitute an exclusive remedy. It is true that NRS 616.294[4] and NRS 616.647[5] provide a basis for modest monetary penalties or even a withdrawal of certification that may be invoked against a self-insurer who fails or refuses to comply with the law. Unfortunately, however, with the exception of the limited benefit an aggrieved claimant may receive as a result of judicial sanctions imposed against a self-insurer, the modest administrative fines that may be assessed provide no financial relief to claimants.

---

other words, an abuse of discretion occurs within the circumference of authority, and an act or omission of bad faith occurs outside the circumference of authority. Stated otherwise, an abuse of discretion is characterized by an application of unreasonable judgment to a decision that is within the actor's rightful prerogatives, whereas an act of bad faith has no relationship to a rightful prerogative even if the result is ostensibly within the actor's ambit of authority. For example, if an administrator decides to delay or deny a claimant's benefits because of a personal dislike for the claimant, the delay or denial would be attributable to an unauthorized act of bad faith despite the fact that a denial or delay could be otherwise among the rightful prerogatives of the administrator. *See* Crosby v. SAIF, 699 P.2d 198 (Or.App. 1985) (holding that State Accident Insurance Fund's conspiring with employer to eliminate a worker's entitlement to benefits is not a matter of discretion).

[4]NRS 616.294 states in pertinent part:

1. The commissioner may impose an administrative fine, not to exceed $500 for each violation, and may withdraw the certification of a self-insured employer if:

. . . .

(c) The employer intentionally fails to comply with regulations of the commissioner regarding reports or other requirements necessary to carry out the purposes of this chapter. . . .

[5]NRS 616.647 states in relevant part that:

1. If the administrator has reason to believe that an insurer or employer has:

. . . .

(e) Refused to pay or unreasonably delayed payment to a claimant of compensation found to be due him by a hearing officer or appeals officer;

(f) Made it necessary for a claimant to resort to proceedings against the employer or insurer for compensation found to be due him by a hearing officer or appeals officer;

(g) Failed to comply with regulations of the department for the acceptance and rejection of claims, determination and calculation of a claimant's average monthly wage, determination and payment of compensation, delivery of accident benefits and reporting relating to these matters . . . .

. . . .

the administrator shall set a date for a hearing. The date must be no

In Hansen v. Harrah's, 100 Nev. 60, 675 P.2d 394 (1984), we recognized a public policy exception to the at-will employment doctrine in instances where employees are terminated in retaliation for the filing of workmen's compensation claims. As a result, we concluded that aggrieved workers thus terminated were entitled to pursue a tort cause of action against their self-insured employers. If, in *Harrah's,* we had been receptive to the argument asserted by respondents in the instant case, we would have declared the statutorily provided administrative fines to be an exclusive remedy. Indeed, NRS 616.647(1)(a) and (2)(c) provide for an administrative fine of "[n]ot more than $1,000" for inducing a claimant not to report an accidental injury or an occupational disease. Thus, within the context of the *Harrah's* situation, if an employer were to induce an injured employee not to file an industrial accident claim under threat of termination, the statutory remedy for the wrongful inducement would be a maximum administrative fine of $1,000. The aggrieved employee would have received nothing by way of financial relief for his wrongful discharge. Similarly, if a self-insured employer were to fail to accept or pay a valid claim for workmen's compensation, the statutory remedy under NRS 616.647(1)(g), (2)(a) and (2)(b) would be a maximum fine of $100 if unintentional or a maximum of $1,000 if intentional. We are unwilling to expose Nevada's injured workmen to such a hollow and illusory form of relief. If the Legislature sees fit to declare the statutory scheme of fines an exclusive remedy to aggrieved workmen whose claims are denied or delayed as a result of negligence or bad faith, the Legislature may enact legislation to that end.

In *Harrah's* we noted that "Nevada's workmen's compensation laws reflect a clear public policy favoring economic security for employees injured while in the course of their employment. It has been a long-standing policy of this Court to liberally construe

---

sooner than 30 days after notice is served upon the insurer or employer of the alleged action and the time and place of the hearing.

2.   If, after an evidentiary hearing, the administrator determines that the insurer or employer has committed the alleged act, the administrator may impose an administrative fine of:

(a) Not more than $100 for each act in violation of paragraph (g) of subsection 1 which was not intentional;

(b) Not more than $1,000 for each intentional or repeated act in violation of paragraph (g) of subsection 1; or

. . . .

5.   The commissioner may withdraw the certification of a self-insured employer if, after a hearing, it is shown that the self-insured employer:

(a) Intentionally or repeatedly committed any of the acts enumerated in paragraph (g) of subsection 1; or

(b) Committed any acts in violation of any other provisions of subsection 1.

such laws to protect injured workers and their families." *Harrah's*, 100 Nev. at 63, 675 P.2d at 396.

Consonant with our prior rulings, we hold that an employee who has suffered damage as a result of the negligent or bad faith failure or refusal by a self-insured employer or its administrator/ agent, to process and timely pay claims properly asserted under the Nevada Industrial Insurance Act (NRS 616) may pursue a tort action in accordance with the limitations set forth in this opinion.[6]

We are aware of the contrary position taken by a number of other courts and commentators who have concluded that a legislative scheme of administrative fines is the exclusive remedy for injured workmen who have been aggrieved by the bad faith or negligence of a self-insured employer in the processing and payment of claims for compensation. *See* Phillips v. Crawford & Co., 248 Cal.Rptr. 371, 373 (Cal.Ct.App. 1988);[7] 2A A. Larson, *The Law of Workmen's Compensation* § 68.34(c) at 13-146 (1990) (citations omitted). However, we are not persuaded by the

---

[6]In order to achieve fairness and parity in causes of action asserted against SIIS, its officers and employees on the one hand, and self-insured employers, their administrators/agents on the other, it is necessary to recognize that the former enjoys the benefit of a $50,000 recovery limit provided by NRS 41.035(1). Consequently, any action seeking tort damages against a self-insured employer or its administrator/agent shall also be subject to a total recovery limit of $50,000 exclusive of interest computed from the date of judgment. Although self-insured employers may derive pecuniary benefits by their self-insured status, they also confer benefits on the heavily congested State Industrial Insurance System by saving the System the administrative burdens associated with the processing of claims presented under self-insured programs.

[7]*See also*, Bright v. Nimmo, 320 S.E.2d 365, 368 (Ga. 1984) (adverse financial consequences from the intentional delay of workers' compensation payments does not give rise to an independent cause of action against the employer or its insurer where penalties for such delay are provided by the act); Hormann v. New Hampshire Ins. Co., 689 P.2d 837, 844 (Kan. 1984) (the worker's exclusive remedy where an insurer intentionally refuses to pay compensation prior to an award is contained in the Act and allowing independent common-law actions would circumvent the intent of the legislature and the Act); Dickson v. Mountain States Mut. Casualty Co., 650 P.2d 1, 2-3 (N.M. 1982) (express remedies provided by the Act are the sole and exclusive remedies available to an employee for claims against his employer or insurer); Hall v. C & P Tel. Co., 809 F.2d 924, 926 (D.C.Cir. 1987) (recognizing a cause of action for intentional bad faith refusal to make timely compensation payments when the act provides for a specific remedy would unravel the legislated compromise between the interests of employees and the concerns of employers); Garrett v. Washington Air Compressor Co., Inc., 466 A.2d 462, 464 (D.C. 1983) (Longshoremen's and Harbor Workers' Compensation Act provides a specific remedy for tardiness in making payments and appellant's remedy was to seek an administrative fine under the Act).

contrary view because although administrative fines may have some deterrent effect on self-insured employers, they do not purport to address the plight of the injured worker who may suffer great deprivation as a result of the tortious denial or delay of his or her benefits. The availability of tort damages under the restrictions provided in this opinion should serve the salutary purposes of worker relief and employer compliance.

Appellants also contend that the district court erred in dismissing their cause of action for intentional infliction of emotional distress. We disagree. The synonym for this particular cause of action is the tort of outrage. We have previously held, in Star v. Rabello, 97 Nev. 124, 625 P.2d 90 (1981), that one of the elements of this tort is extreme and outrageous conduct. *Id.* at 125, 625 P.2d at 91-92. Moreover, we have inferred that "malicious intent" is a descriptive aspect of the tort of outrage. *See* Branda v. Sanford, 97 Nev. 643, 648, 637 P.2d 1223, 1227 (1981). In short, this particular tort would, at least in many instances, embrace conduct that would support a claim for punitive damages and we have held that such damages are unavailable in the type of action presented by the instant case. Moreover, recognizing a cause of action for emotional distress in the workmen's compensation context raises the specter of "almost every emotion-based case turning up as some kind of tort suit." 2A A. Larson, *The Law of Workmen's Compensation* § 68.34(a) at 13-116 (1987 & Supp. 1990). Finally, the Legislature has established the degree to which self-insurers should be punished for conduct of the type here present by imposing administrative fines in specific maximum amounts.

Appellants also urge us to recognize a discrete cause of action for the negligent infliction of emotional distress. We have not as yet had occasion to consider this particular tort within the context of claims involving the tortious delay or denial of claims for workmen's compensation, and do not consider it wise to do so. Moreover, because the key element for liability in such an action is negligence, and we have already determined that, under the circumstances alleged here, a common law negligence action is available to workers employed by self-insured employers, emotional distress is more appropriately treated as an element of damage in such causes of action rather than a cause of action itself.

Finally, appellants argue that NRS 686A.310, which enumerates unfair insurance practices, gave rise to a private cause of action even prior to its 1987 amendment. On this record, we are not prepared to agree. It is at least doubtful that chapter 686A

applies to self-insurers in the workmen's compensation system. In any event, given our disposition of this appeal we decline to address the issue, including the retrospective application of the statute as urged by appellants.

We have fully examined appellants' remaining issues and conclude that they are without merit. For the reasons stated above, we hold that the trial court erred in dismissing appellants' negligence and bad faith claims, and therefore reverse the lower court's judgment as to those claims; in all other respects the judgment below is affirmed.

ROSE, J., concurs.

YOUNG, J., with whom MOWBRAY, C. J., agrees, concurring in part and dissenting in part:

I concur with the court's opinion to restore appellant's actions for negligence and bad faith.

I disagree with the conclusion of the majority to permit liability only on operational decisions and its conclusion that punitive damages are unavailable to appellant.

Under the banner of what is termed a "parity of reasoning," the majority states "[w]e therefore hold that self-insured employers and their administrators/agents are liable to negligent claims processing only to the extent that such processing constitutes what would be properly classified as an operational decision if made within the State Industrial Insurance System." In response thereto, it is respectfully submitted that the limitation on liability for the State Industrial Insurance System originates in NRS 41.032.[1] The attempt in the majority opinion to provide the same protection to the self-insurer purports to give the self-insured employer the same protection accorded the State Industrial Insurance System and other state agencies by statute. The majority opinion is clearly judicial legislation.

---

[1] NRS 41.032 states:

Conditions and limitations on actions: Acts and omissions of officers, employees and immune contractors. Except as provided in NRS 278.0233 no action may be brought under NRS 41.031 or against an immune contractor or an officer or employee of the state or any of its agencies or political subdivisions which is:

1. Based upon an act or omission of an officer, employee or immune contractor, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid, if the statute or regulation has not been declared invalid by a court of competent jurisdiction; or

2. Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused.

Also, under the aegis of fairness, the majority opinion seeks to limit punitive damages against self-insured employers. As authority, it cites Rush v. Nevada Industrial Commission, 94 Nev. 403, 580 P.2d 952 (1978), for its holding that punitive damages are unavailable in actions involving negligent or malicious claims processing against the State Industrial Insurance System. An examination of *Rush* indicates that the holding was predicated on NRS 41.035.[2] Clearly, the immunity offered by NRS 41.035 was only for the benefit of public entities and should not be construed by our court to apply to self-insured private employers.

While the goal of the majority is fairness, it seeks to reach this end by flagrant judicial legislation. The legislature is presumed to have known the law when enacting the measure to allow self-insurers. It is not the function of this court to fill in what may now, in our wisdom, appear to be legislative oversight. If, indeed, this is a problem, the remedy is not for us to change the law by judicial fiat but for the legislature to address this problem in the next session.

For the reasons stated above, I dissent from the majority opinion which, by judicial overreach, would provide to private employers certain immunities which the legislature has specifically made available only to governmental agencies.

SPRINGER, J., dissenting:

Each of the plurality opinions would reverse the judgment of the trial court and restore Falline's tort actions. I cannot agree with either opinion; I think the judgment of the trial court should be affirmed.

I would affirm because I believe that Falline has not properly stated any tort claims in his pleading. This being so, I see no purpose in taking a position on the differences of opinion expressed in the two plurality opinions. These issues, in my opinion, will not be ripe for consideration unless and until the pleading is put in proper order.

As indicated, I dissent from the majority's restoration of Falline's negligence and bad faith claims because in my view Falline's amended complaint does not state a claim upon which legal relief can be granted.

---

[2]NRS 41.035 states in pertinent part:

> 1. An award for damages in an action sounding in tort brought under NRS 41.031 or against a present or former officer or employee of the state or any political subdivision, immune contractor or state legislator arising out of an act or omission within the scope of his public duties or employment may not exceed the sum of $50,000, exclusive of interest computed from the date of judgment, to or for the benefit of any claimant. An award may not include any amount as exemplary or punitive damages.

The first difficulty that I have with Falline's pleading is that although Gibbens is described as an agent of GNLV, there is no imputation as to how the principal and agent are involved in the tortious conduct alluded to in the complaint. The charging allegation refers generally to "defendants"; and, although it appears from a reading of the record that Falline is trying to accuse Gibbens of tortious misconduct and to charge GNLV as a principal under the doctrine of *respondeat superior,* this is anything but clear in the amended complaint.

The thrust of Gibbens' position is more clearly manifested in one of its legal memorandums: "Gibbens Company, Inc. administers the claims and makes the determination of when benefits are paid or not to be paid." Gibbens, then, is "an agent of the employer [GNLV] for the purposes of determining whether or not the employer is obligated to pay any benefits and if so, in what amount." Mottola v. R. L. Kantz & Co., 199 Cal. App.3d 98, 108, 244 Cal.Rptr. 737, 742 (1988). The negligence or bad faith charged in this case was necessarily committed by Gibbens in the process of making the "determination of when benefits are paid or not to be paid." Falline charges that in making this "determination" Gibbens[1] not only acted "negligently, grossly negligently, carelessly, willfully and maliciously," the claims administrator also "breach[ed] the obligation of good faith and fair dealing by a negligent and intentional failure to pay benefits when due." I would not permit negligent or intentional tort actions in this case to proceed on the present pleading because the capacities of the parties are so ill-defined as to give the defendants inadequate notice of the nature of the action against them.

### Sufficiency of the Negligence Claim for Relief

It does not appear to me that Falline has stated a negligence claim against Gibbens. Ordinarily the making of administrative decisions such as granting or refusing industrial accident claims does not result in tort liability. These decisions are discretionary in nature and do not involve the type of activity out of which negligence claims ordinarily arise. The exception to this rule is found in the case of Rush v. Nevada Industrial Commission, 94 Nev. 403, 580 P.2d 952 (1978), in which a claim for negligent

---

[1]Although Falline's charging allegations refer to "defendants," it is clear from a reading of the record that the allegedly negligent conduct complained of is that of Gibbens as administrator and decision-maker and that any liability on the part of GNLV is vicarious and necessarily arises solely out of its capacity as a principal. My reading of the record does not reveal that GNLV took an active part in turning down Falline's claim but, rather, that it was merely following and adopting the administrative decisions of the Gibbens Company. It does not appear to me from the record in this case that GNLV acted in a manner that could be properly termed negligent or in bad faith.

decision-making was allowed when the Nevada Industrial Commission (predecessor to SIIS) negligently delayed claims processing in such a way as to cause a claimant to lose his eye.[2]

There is no averment of facts in the amended complaint that would disclose or give any hint as to what negligent conduct Gibbens might be charged with doing. The claim of negligence is simply that Gibbens was somehow guilty of a negligent refusal to pay Falline. The plaintiffs' charging allegations do not put the defendants on notice in any way as to the manner in which they were supposed to have breached their duty of due care. This case is far different from the suggested averment provided in Form 9, NRCP, which authorizes an injured traffic victim to aver that a defendant "negligently drove a motor vehicle against plaintiff who was then crossing said highway." In the Form 9 type of pleading, the defendant is put on notice that he or she is charged with driving a motor vehicle in a negligent manner into a pedestrian at a specified place. Although the exact nature of the defendant's untoward conduct is not described, certainly the defendant is put on notice as to what he or she did and where and when. Here, the defendants are not given a clue as to the nature of their supposed negligent decision-making. It would appear that a *Rush* type of action might possibly have been contemplated, but the mere allegation of negligent refusal to honor a claim does not, in my opinion, state a valid tort claim against Gibbens. If Falline has a *Rush*-like claim against Gibbens, he should be allowed to plead it properly. Upon remand to the district court, the court might then grant leave for Falline to plead a proper negligence claim if he is aware of facts to support such a claim. Thus far, none appears. Any vicarious liability on the part of GNLV must, of course, depend on the sufficiency of the claim against Gibbens. Further, I have a serious question in my mind as to whether vicarious liability can be imposed at all on a self-insured employer for negligent acts of a claims administration contractor.

### Sufficiency of the Bad Faith Claim for Relief

Falline charges that the "defendants" are guilty of "a breach of the obligation of good faith and fair dealing by a negligent and intentional failure to pay benefits when due." Again, although Falline charges both defendants, it appears to me that the Gibbens Company, as administrator, is the actor, the "refusor," who has

---

[2]*Rush* holds only that the industrial compensation statute does not preclude a claimant's pursuing a negligence action against the state commission for damage resulting from tardy handling of a claim. The question of negligent exercise of discretionary decision-making powers as against negligent operational performance (tardiness in acting on a claim) was not discussed or decided.

actually done the deed that forms the predicate for this intentional tort action.

Because one cannot be guilty of both "a negligent and intentional failure to pay," I must assume for the purposes of this opinion that what we are dealing with here is a charge that Gibbens' conduct in refusing the Falline claim rendered it guilty of "a breach of the obligation of good faith and fair dealing by . . . *intentional* failure [refusal] to pay benefits when due." (My emphasis.)

As I see it, there are a number of difficulties associated with creating in this jurisdiction a new intentional tort called "breach of the *obligation* [not covenant] of good faith and fair dealing," a tort that was, according to the averments of the amended complaint, committed by "intentional failure to pay benefits when due." (My emphasis.)

The new, "breach-of-obligation" tort proposed by Falline is, I take it, some relation to tortious breach of the implied *covenant* of good faith and fair dealing that is a part of every contract. I first wonder if there is a contract in this case from which the implied covenant can be derived. Neither defendant is in the insurance business; neither charges premiums; neither enters into an insurance-like contract with industrial claimants. I realize that other jurisdictions have recognized torts which arise out of an "obligation" of good faith; but, to me, presently at least, this "obligation" is of unknown and, in Nevada, unprecedented origin. I would like to know more about this new tort before I rule in favor of the creation of such a tort in Nevada. These matters should be dealt with at the trial level.

Assuming that a breach of the "obligation" referred to by Falline can be turned into something analogous to the bad faith tort in insurance cases which was recognized in United States Fidelity v. Peterson, 91 Nev. 617, 540 P.2d 1020 (1975), I certainly doubt that a mere intentional failure to pay when due is alone sufficient to state a claim for an intentional tort. In *Peterson*, as I view it, the basis for these kinds of tort actions are insurance companies' refusing without proper cause to honor insurance claims after having knowledge that the claims are valid. It is not clear to me what Falline's allegation of "intentional *failure* to pay benefits when due" comprises, but it occurs to me that there might be a variety of non-tortious reasons why an insurance company might *fail* to pay a claim when due. If Falline had charged Gibbens with actual knowledge that Falline had a valid claim and that, despite such knowledge, Gibbens consciously decided to deprive Falline of the benefits to which it knew he was entitled, then we might be approaching the presence of ingredients out of which an intentional tort might be made.

Even if an intentional tort had been legally pleaded, GNLV, of course, would not be responsible for the tort as pleaded because, as a principal, apparently GNLV did not participate actively in the wrongful administrative decision-making process engaged in by Gibbens, and which is claimed to constitute an intentional tort.

As said, I think the trial judge acted properly in dismissing the negligence and bad faith tort claims because the amended complaint fails to state tort claims upon which relief can be granted. I would affirm the judgment of the trial court.