AMERICAN EXCESS INSURANCE COMPANY, Appellant, v. MGM GRAND HOTELS, INC., GRAND RESERVATION SERVICES, INC., GRAND PURCHASING SERVICES, INC., HOTEL LINEN SERVICES, INC., RENO RESORTS, INC., MGM GRAND HOTEL-RENO, INC., RENO RESERVATION SERVICES, INC., MGM GRAND HOTEL-LAS VEGAS, INC., Respondents.

No. 16425

December 18, 1986                    729 P.2d 1352

---

[Rehearing denied May 27, 1987]

*Dickerson, Miles, Pico & Mitchell, Eleissa C. Lavelle,* Las Vegas, and *Boornazian, Jensen & Garthe,* Oakland, California, for Appellant.

*Lionel Sawyer & Collins* and *David N. Frederick,* Las Vegas, for Respondents.

# OPINION

*Per Curiam:*

On November 21, 1980, a major fire occurred at the MGM Grand Hotel and Casino in Las Vegas, resulting in more than 3,000 liability claims for wrongful death, personal injury and property damage. At the time of the fire, defendants/counterclaimants/respondents MGM Grand Hotels, Inc. and MGM Grand Hotel-Las Vegas, Inc. (MGM) carried $30,000,000 of liability insurance coverage written on a layered basis by four different insurance companies. Plaintiff/counterdefendant/appellant American Excess Insurance Company (AEI) provided the second layer of excess umbrella coverage, in the amount of $10,000,000. The policy provisions at issue provided:

> [Definition of Loss Payable.] The Company's obligation to pay any ultimate net loss and costs with respect to any accident or occurrence falling within the terms of this Certificate shall not attach until the amount of the applicable underlying limit has been paid by or on behalf of the Insured on account of such accident or occurrence.
> \*\*\*\*
> . . . legal expenses . . . that are incurred by the Insured . . . shall be apportioned as follows:
> \*\*\*\*
>> (3) Should . . . the sum for which the said claim or suit may be settled exceed the underlying insurance limit or limits, then the Company . . . *shall contribute to the costs incurred by the Insured in the ratio that its proportion of the ultimate net loss, as finally adjusted, bears to the whole amount of such ultimate net loss.* (Emphasis added.)

"Ultimate net loss" under the policy is "the sums paid in settlement of losses for which the Insured is liable."

The primary insurance carrier paid MGM the policy liability coverage limit and an amount for legal fees in settlement of its policy. The first excess insurance carrier reimbursed MGM for its defense costs and legal expenses until its limit for indemnity and defense costs and legal expenses was paid. After MGM made demand upon AEI for reimbursement of its settlement payments and defense costs and legal expenses, AEI reimbursed MGM for settlement payments totalling the full amount of its indemnity coverage.

AEI then filed this action seeking a declaration that it was not obligated to reimburse MGM for defense costs and legal expenses

incurred in litigating and settling liability claims falling within its layer of coverage until all of the liability claims arising out of the fire had been resolved. MGM counterclaimed for breach of the duty of good faith and fair dealing under the insurance contract and abuse of process. The district court granted MGM's motion for partial summary judgment on the issue of liability for the defense costs and legal expenses. The district court interpreted the insurance contract as requiring AEI to pay MGM defense costs as they were incurred.

After trial on the remaining issues, the district court stated that defense costs and legal expenses would be apportioned only where they were "incurred in connection with one single claim or suit which straddles two layers of coverage, *i.e.*, a claim or suit for which the insured is reimbursed with monies partly from the underlying insurance and partly from AEI's coverage layer." The district court ordered AEI to pay all defense costs incurred during the time AEI was paying its indemnity limit; *i.e.*, the time it was "at risk." The district court found AEI's conduct in refusing timely payment of the defense costs and legal expenses a breach of its duty of good faith and fair dealing. The court also found that AEI's institution of the declaratory relief action in the inconvenient forum of Washoe County without having first conducted an adequate investigation was for the ulterior purpose of delaying and limiting payment and was an abuse of process. The district court awarded MGM compensatory and punitive damages. AEI instituted this appeal.

AEI argues that the policy provides for a proration of all defense costs and legal expenses based on AEI's proportionate share of the total of all sums paid in settlement of losses on all claims and suits. We agree.

We have previously held that in ascertaining the meaning of an insurance policy, the language should be analyzed from the perspective of one untrained in law or in the insurance business. Policy terms should be viewed in their plain, ordinary and popular connotations. National Union Fire Ins. v. Reno's Exec. Air, 100 Nev. 360, 682 P.2d 1380 (1984). The contract will be read as a whole and given a construction which will accomplish the object of providing indemnity for the losses covered by the policy. *Id.* In Aetna Cas. & Sur. Co. v. Certain Underwriters, 129 Cal.Rptr. 47 (Cal.Ct.App. 1976), the court concluded, relying on similar language of the policies, rules of insurance contract construction, and equitable subrogation, that defense costs should be apportioned between insurers based on a ratio of the amount paid by each insurer to the total amount of the indemnity

payments paid by all insurers in settlement of claims and satisfaction of judgments.

We conclude that the policy provisions at issue compel the interpretation that AEI is responsible for its proportional share of all defense costs attributable to claims or suits arising out of the fire. Thus, ultimate net loss, "as finally adjusted," is the total amount of all losses for which the insured is liable arising out of the fire. AEI's pro rata share of defense costs may be described arithmetically as the product of the totality of defense costs and legal expenses multiplied by the ratio of AEI's full indemnity amount to the ultimate net loss. The language of the contract is clear. To interpret the policy in any other manner would render meaningless the language "as finally adjusted" in the provision concerning payment of the legal costs. The district court therefore erred in requiring AEI to pay all defense costs during the time AEI was at risk.

We also conclude, therefore, that the lower court erred in finding bad faith and abuse of process. Bad faith involves an actual or implied awareness of the absence of a reasonable basis for denying benefits of the policy. *See* United States Fidelity v. Peterson, 91 Nev. 617, 540 P.2d 1070 (1975); *accord* Noble v. National Am. Life Ins. Co., 624 P.2d 866, 868 (Ariz. 1981); Davy v. Public Nat'l Ins. Co., 5 Cal.Rptr. 488 (Cal.Ct.App. 1960). In Neal v. Farmers Ins. Exch., 148 Cal.Rptr. 389, 395 n. 5 (1978), the court emphasized good faith as "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. . . ."

Because we conclude that AEI's interpretation of the contract was reasonable, there is no basis for concluding that AEI acted in bad faith. In finding bad faith, the district court relied, *inter alia,* on AEI's resistance to MGM's discovery efforts. However, AEI has already been punished for failure to comply with discovery by the imposition of sanctions. It follows from the foregoing conclusion that AEI was justified in filing its complaint for declaratory relief and hence the district court's judgment on grounds of an abuse of process was error. *See* Bull v. McCuskey, 96 Nev. 706, 615 P.2d 957 (1980).

Moreover, the district court improperly awarded MGM attorney's fees and punitive damages. Attorney's fees are appropriate when a claim is brought without reasonable ground or to harass the prevailing party. NRS 18.010. AEI's conduct in filing suit

was not unreasonable. The coverage issue was one of first impression. Additionally, awards of punitive damages are improper where the evidence fails to show either a willful wrong or the damage as an intended or necessary consequence. *See* NRS 42.010; Rowland v. Lepire, 99 Nev. 308, 662 P.2d 1332 (1983); Fuller v. Incopero, 97 Nev. 448, 634 P.2d 452 (1981); United States Fidelity v. Peterson, *supra;* Village Development Co. v. Filice, 90 Nev. 305, 526 P.2d 83 (1974).

Accordingly, the judgment is reversed. The case is remanded to the district court for further proceedings consistent with this opinion.