PIONEER CHLOR ALKALI COMPANY,
INC., Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PENNSYLVANIA, Defendant.

No. CV–S–93–276–RLH.

United States District Court,
D. Nevada.

Sept. 1, 1994.

J. Randall Jones and William Kemp of Harrison, Kemp & Jones, and Kevin R. Stolworthy of Jones, Jones, Close & Brown, Las Vegas, NV, for plaintiff.

Philip Silverberg of Mound, Cotton & Wollan, New York City, and Thomas D. Beatty, Las Vegas, NV, for defendant.

### ORDER

(Motion for Partial Summary Judgment— # 164, # 165, # 166)

HUNT, United States Magistrate Judge.

This matter comes before the Court on the following documents filed by Defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") which are collectively referred to as "Motion for Partial Summary Judgment": **Defendant's Notice of Motion for Partial Summary Judgment on the Issue of Alleged Bad Faith** (# 164, filed June 17, 1994); **Memorandum of Points and Authorities in Support of Defendant's Motion for Partial Summary Judgment on Plaintiff's Bad Faith Claims** (# 165, filed June 17, 1994); and **Defendant's Statement Pursuant to Local Rule 140–7 in Support of its Motion for Partial Summary Judgment on Plaintiff's Bad Faith Claims** (# 166, filed June 17, 1994).

Plaintiff Pioneer Chlor Alkali Co., Inc. ("Pioneer") responded with Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment on Plaintiff's Bad Faith Claims (# 189, filed July 8, 1994) and Plaintiff's Counterstatement of Facts Relating to Opposition to Defendant's Motion for Partial Summary Judgment on the Issue of Bad Faith (# 191, filed July 12, 1994).

On July 19, 1994, National Union filed its Reply Memorandum of Points and Authorities in Further Support of Defendant's Motion for Partial Summary Judgment on Plaintiff's Bad Faith Claims (# 199).

## INTRODUCTION

This action arises out of the May 6, 1991 chlorine gas leak which occurred at Pioneer's plant in Henderson, Nevada. On May 6, 1991, Pioneer's Henderson plant was insured by an "all risk" insurance policy (the "Policy") issued by National Union. Pioneer's Second Amended Complaint asserts three causes of action: (1) Pioneer's First Claim for Relief is for declaratory relief, and was previously addressed in earlier summary judgment proceedings, (see Order # 174); Pioneer's Second Claim for Relief alleges unfair claim practices in violation of Chapter 686A of the Nevada Revised Statutes; and (2) After obtaining leave of Court, Pioneer amended its Complaint to add a Third Claim for Relief for breach of the implied covenant of good faith and fair dealing, a tort action often referred to as "bad faith."

Pioneer's Second and Third Claims for Relief and Pioneer's request for punitive damages are the subject of the present Motion for Partial Summary Judgment by National Union.

## DISCUSSION

### A. Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Zoslaw v. MCA Distrib. Corp., 693 F.2d 870, 883 (9th Cir.1982). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); California Arch. Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1468 (9th Cir.1987), cert. denied, 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988).

■ If the party seeking summary judgment meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270 (9th Cir. 1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. If the opposing party does submit affidavits, they must affirmatively demonstrate personal knowledge. British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir.1978), cert. denied, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." Id.

■ A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of events. See Admiralty Fund v. Hugh Johnson & Co., 677 F.2d 1301, 1305–06 (9th Cir.1982); Admiralty Fund v. Jones, 677 F.2d 1289, 1293 (9th Cir.1982). "[S]ummary judgment must be entered against a party 'who fails to make a showing sufficient to establish the existence of an element essen-

tial to that party's case, and on which that party will bear the burden of proof at trial.' " *Berg v. First State Ins. Co.*, 915 F.2d 460, 466 (9th Cir.1990) (quoting *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53).

■ All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor*, 677 F.2d 1297, 1298 (9th Cir.1982).

The Supreme Court's 1986 trilogy of cases cited above [1] establish that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1).

**B. Choice of Law**

■ Generally, a federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). However, when a case has been transferred to a different venue, the transferee court applies the choice of law rules that the transferor court would have applied. *Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990). The present case originated in Texas state court and was removed by Pioneer to a federal court in Texas as the case satisfied diversity jurisdictional requirements. On a motion by National Union, the case was then transferred from the Southern District of

Texas to this Court pursuant to 28 U.S.C. § 1404(a). This Court then must apply the choice of law rules which the Texas federal court would have applied, i.e., Texas choice of law rules.

Texas follows the "most significant relationship" test of the Restatement (Second) of Conflicts. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984).

National Union argues that Texas law should control. National Union asserts that the case was initiated in Texas by Pioneer; Pioneer's principal place of business is in Texas; the Policy insures premises in several states including Texas; and the Policy was executed in Texas.

■ The place of contracting insurance is generally not a significant contact. *See Industrial Indem. Ins. Co. v. United States*, 757 F.2d 982, 986 (9th Cir.1985) (citing Restatement (Second) of Conflicts § 188 cmt. e). In the insurance area, the state with the most significant relationship is usually the state in which the insured risk was located. *See* Restatement (Second) of Conflicts § 193 [2]; *see also Industrial Indem.*, 757 F.2d at 986 ("[w]hen insurance is involved, the principal location of the insured risk normally is the state whose law applies") (applying most significant relationship test). In this case, the insured premises were of course Pioneer's Henderson, Nevada chemical plant.

■ National Union points out that Pioneer's Policy covered several facilities in several states. Section 193 of the Restatement envisions such multiple risk policies. In multiple risk policies, courts treat the policy as though it were several separate policies so that a dispute involving a particular facility will be governed by the law of the state in which that facility is located. *See* Restatement (Second) of Conflicts § 193, cmt. f (1971) (if a policy insures premises in states X, Y, and Z, a dispute concerning damage to

---

1. *Celotex, Matsushita,* and *Anderson.*

2. Section 193 provides:
 The validity of a contract of fire, surety or casualty insurance *and the rights created thereby* are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to

the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.
Restatement (Second) of Conflicts § 193 (emphasis added).

the facility in state X will normally be governed by the law of state X).

This principal is not so incredible. For if National Union chooses to transact business in several states by insuring properties in several states, National Union should expect to be subject to the laws of each of those states. Each state has a significant interest in regulating insurance practices which concern its residents or property within its borders. Thus, Nevada is the principal place of the insured risk relevant to this suit, Pioneer's Henderson facility. Pioneer's claims are centered around the insured Henderson plant. With respect to that facility, National Union is subject to its contractual obligations and any obligations imposed by Nevada common and statutory law.

Having weighed the interests of each state and considered the principals set forth in Section 6 of the Restatement (Second) of Conflicts, the Court finds that Nevada has the most significant relationship to this dispute. Accordingly, Nevada law will control.

### 1. National Union is Subject to Chapter 686A of the Nevada Revised Statutes.

Pioneer's Second Claim for Relief is based on Chapter 686A of the Nevada Revised Statutes. In addition to arguing that Texas bad faith law controls this action, National Union also argues that it is not subject to the standards set forth in Chapter 686A of the Nevada Revised Statutes. Under that chapter, an insurer "shall not engage in this state in any practice which is ... an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." NRS 686A.020. The statute then lists identified acts which are declared to be unfair practices. *See* 686A.310. A private cause of action is available to an insured for violations of NRS 686A.310 by the insurer. *See* NRS 686A.310(2).

 National Union asserts that Chapter 686A of the Nevada Revised Statutes does not apply to its handling of Pioneer's claim because National Union did not engage in a practice "in this state [Nevada]," NRS 686A.020. National Union cites no authority

supporting its interpretation of NRS 686A.020.

National Union's argument is completely without merit. Chapter 686A is part of a comprehensive plan to regulate insurance practice in Nevada. As touched upon earlier in this Order, by insuring premises in Nevada, National Union has engaged in the insurance business in Nevada. Consequently, National Union is subject to Nevada insurance law. That a National Union agent was sitting in another state when she decided to deny Pioneer's claim provides no exemption to Nevada insurance law.

### C. Common Law Bad Faith and Statutory Unfair Claim Practices Are Two Separate and Distinct Causes of Action With Different Legal Standards.

 Having established that National Union is subject to the duties imposed by Nevada insurance law, the Court turns to the causes of action which are the subject of the present Motion for Partial Summary Judgment: statutory unfair claims practices (Pioneer's Second Claim for Relief) and common law bad faith (Pioneer's Third Claim for Relief).

Pioneer alleges the following instances of wrongful conduct: (1) National Union failed to make a prompt coverage determination; (2) National Union failed to adequately investigate all possible grounds of coverage, including Pioneer's "rag theory"[3]; (3) National Union failed to adequately monitor the claim as it was, or was not, being processed; (4) National Union adopted an arbitrary and capricious interpretation of the corrosion exclusion clause; (5) National Union failed to provide coverage to Pioneer; and (6) National Union failed to promptly provide Pioneer, within a reasonable time after proofs of loss were submitted by Pioneer, with a reasonable explanation for the denial of Pioneer's claim.

Pioneer asserts that these allegations state causes of action under common law bad faith and statutory unfair claim practices.

---

3. Pioneer's rag theory is set out in Order # 174.

Pioneer's unfair claim practices claim is based primarily on NRS 686A.310. Pioneer does not explicitly set out which subsections of NRS 686A.310 National Union allegedly violated. However, based on the instances of wrongful conduct alleged by Pioneer, and giving a liberal reading to NRS 686A.310, it appears that Pioneer has stated claims under the following provisions of NRS 686A.310(1):

(c) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

(d) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.

(e) Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.

(n) Failing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of his claim or for an offer to settle or compromise his claim.

The other subsections of NRS 686A.310 do not appear to be possible bases for recovery under the facts of this case, and Pioneer has not affirmatively alleged such subsections (other than alleging in its Second Amended Complaint that National Union has violated NRS 686A.010–686A.315, inclusive).

Before addressing the merits of Pioneer's two causes of action, a general discussion of the distinctions between and the evolutions of common law bad faith and NRS 686A.310 is required. For Pioneer and National Union are mistaken in their assumptions that NRS 686A.310 and bad faith are identical causes of action. *See generally Hart v. Prudential Property & Casualty Ins. Co.,* 848 F.Supp. 900 (D.Nev.1994). As will be demonstrated below, bad faith and NRS 686A.310 involve different legal analyses, and a violation of a

provision of NRS 686A.310 is not per se an act of bad faith. *Id.*

### 1. *Nevada Law on Bad Faith*

The Supreme Court of Nevada adopted the cause of action called "bad faith" in *United States Fidelity & Guar. Co. v. Peterson,* 91 Nev. 617, 540 P.2d 1070 (1975). The duty to deal fairly and in good faith then is implied by common law. *Hart,* 848 F.Supp. 900. Breach of the covenant of good faith and fair dealing is a tort. *Peterson,* 540 P.2d at 1071. An insurer breaches the duty of good faith when it refuses "without proper cause to compensate its insured for a loss covered by the policy." *Peterson,* 540 P.2d at 1071; *accord Pemberton v. Farmers Ins. Exch.,* 109 Nev. 789, 858 P.2d 380, 382 (1993). An insurer is without proper cause to deny a claim when it has an "actual or implied awareness" that no reasonable basis exist to deny the claim. *See American Excess Ins. Co. v. MGM Grand Hotels, Inc.,* 102 Nev. 601, 729 P.2d 1352, 1354 (1986) (citing *Peterson,* 540 P.2d 1070); *accord Falline v. GNLV Corp.,* 107 Nev. 1004, 823 P.2d 888, 891 (1991) (bad faith is " 'the absence of a reasonable basis for denying benefits … and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim' ") (citations omitted). Thus, the insurer is not liable for bad faith for being incorrect about policy coverage as long as the insurer had a reasonable basis to take the position that it did. *See American Excess Ins. Co.,* 729 P.2d at 1355 ("[b]ecause we conclude that AEI's [insurer's] interpretation of the [insurance] contract was reasonable, there is no basis for concluding that AEI acted in bad faith").[4]

### 2. *Unfair Claim Practices—NRS 686A.310*

In 1975, the Nevada legislature passed Assembly Bill No. 594, *see* 1975 Nev.Stat. 1284, which pertained to the Nevada Insurance

---

4. Throughout this opinion, when the Court discusses bad faith, the Court is discussing the scope of a bad faith action in the context of a first party action. A first party action involves a claim made on an insurance policy by the insurer's own insured. A claim made on the insurance policy by another persona against the in-

sured is a third party claim. Nothing in this opinion is intended to address issues involving an insurer's duty of good faith and fair dealing in the third party context, e.g., settling a claim against the insured within or outside the policy limits.

Code. Section 6 of A.B. 594 designated certain acts by insurers to be unfair claims practices. 1975 Nev.Stat. 1284 Sec. 6 (codified at NRS 686A.310). A.B. 594 was modeled after the National Association of Insurance Commissioners Act. *See* Minutes of Senate Commerce and Labor Committee, May 16 1975. During the Senate Commerce an Labor Committee hearing, Nevada's Insurance Commissioner testified that A.B. 594 gave his Office better means for addressing unfair trade and claim practices. The 1975 version of NRS 686A.310 did not expressly grant insureds a private cause of action for violations of NRS 686A.310 by insurers. Thus, NRS 686A.310 was originally a means of increasing the regulatory power of the state Insurance Commissioner.

In 1987, Nevada's legislature passed A.B. 811 which, among other things, added subsection 2 to NRS 686A.310 expressly providing insureds with a private cause of action.[5]

NRS 686A.310 supplies a list of acts deemed to be unfair practices.[6] Each provision of NRS 686A.310 sets out its own requisite standard of conduct. However, none of the subsections contain a *mens rea* of knowing or reckless intent as is the case with bad faith. Neither do the provisions of NRS 686A.310 necessarily involve the denial of a claim. *See, e.g.,* NRS 686A.310(1)(i) ("failing upon *payment of a claim,* to inform insureds or beneficiaries of the coverage under which payment is made") (emphasis added). *Accord Hart,* 848 F.Supp. at 904. Several of the provisions of NRS 686A.310 involve a reasonableness standard. *See, e.g.,* NRS 686A.310(c), (d); *see also* NRS 686A.310(e), (n) (involving questions as to the promptness of an insurer's actions). While bad faith involves the absence of any reasonable basis to deny coverage, bad faith is not a reasonableness of conduct standard. *Cf. Falline,* 823 P.2d at 891–92 (1991) (distinguishing between negligent and bad faith denial of claim under workmen's compensation law). Thus, bad faith involves something more than an

unreasonable action, a negligent action, by the insurer. That is, bad faith does not directly address the manner in which an insurer processes a claim as does NRS 686A.310. Bad faith requires an awareness that no reasonable basis exists to deny the insured's claim. *American Excess Ins.,* 729 P.2d at 1354.

Thus, bad faith is not as broad in scope as NRS 686A.310. Bad faith exists where an insurer denies a claim without any reasonable basis and with knowledge that no reasonable basis exists to deny the claim. In contrast, the provisions of NRS 686A.310 address the manner in which an insurer handles an insured's claim whether or not the claim is denied. Furthermore, Nevada's Supreme Court has never held that an act embodied in NRS 686A.310 by itself constitutes bad faith.

### 3. *NRS 686A.310 Was Not Intended to Codify Common Law Bad Faith.*

There is also no support for the view that in enacting NRS 686A.310, the Nevada legislature intended to, or thought it did, codify common law bad faith.

The 1975 version of NRS 686A.310 could not have been intended to codify common law bad faith. The Nevada legislature passed A.B. 594 in May 1975 prior to the Supreme Court of Nevada's adoption of the tort of bad faith in *Peterson,* 540 P.2d 1070 (decided October 10, 1975). As previously stated, NRS 686A.310 was enacted for the purpose of strengthening the state Insurance Commissioner's regulation of insurers.

While the 1987 amendment, A.B. 811, did provide for a private cause of action for a violation of NRS 686A.310, there is no indication that the 1987 Nevada legislature viewed the provisions of NRS 686A.310 as acts constituting bad faith. A witness named William Paterson Cashill testified before the Assembly Commerce Committee and stated

---

**5.** Subsection 2 provided that
In addition to any rights or remedies available to the commissioner, an insurer is liable to its insured for any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 as an unfair practice.

A.B. 811, 1987 Nev.Stat. 1067.

**6.** See *supra* p. 1242 for the provisions of NRS 686A.310 which are relevant to this case.

that he believed the 1987 amendment resulted in a codification of bad faith. *See* Minutes of Nevada Assembly Committee on Commerce, May 25, 1987. However, Mr. Cashill was not a Nevada legislator. Mr. Cashill was an attorney testifying on behalf of the Nevada Trial Lawyers Association. *Id.* There is no indication that the Nevada legislature adopted the views of this one witness when it passed A.B. 811. *Accord Hart,* 848 F.Supp. at 904 (Court unpersuaded that Nevada legislature intended to codify common law bad faith by enacting NRS 686A.310); *but cf. Crystal Bay Gen. Improvement Dist. v. Aetna Casualty and Sur. Co.,* 713 F.Supp. 1371, 1376 (D.Nev.1989) (citing Mr. Cashill's testimony as support for conclusion that pre–1987 version of NRS 686A.310 permitted implication of a private cause of action).

Furthermore, in the nineteen years since the enactment of NRS 686A.310, Nevada's Supreme Court has never announced that this statute embodies the law of bad faith.

**4. *The Supreme Court of Nevada Has Consistently Announced and Ruled That Bad Faith Requires the Denial of a Claim and the Absence of any Reasonable Basis to Deny the Claim.*[7]**

Nevada's Supreme Court has consistently announced and ruled that bad faith involves the denial of an insured's claim without any reasonable basis.[8] *Pemberton,* 858 P.2d 380 (1993); *United Fire Ins. Co. v. McClelland,* 105 Nev. 504, 780 P.2d 193 (1989); *American Excess Ins. Co.,* 729 P.2d 1352 (1986); *Peterson,* 540 P.2d 1070 (1975); *accord Falline,* 823 P.2d at 891 (employee may pursue tort action of bad faith against self-insured employer for the bad faith denial of a workman's compensation claim).

However, the Court will address some language in two Nevada cases which could su-

perficially be interpreted as departing from the Nevada Supreme Court's otherwise consistent view that bad faith involves a denial without proper cause.

First, in *Farmers Home Mut. Ins. Co. v. Fiscus,* 102 Nev. 371, 725 P.2d 234 (1986), the insureds returned home from a three week vacation to discover that their house had been flooded by a broken pipe leading to the swamp cooler. The insurance company briefly inspected the damage and denied the Fiscus' claim for coverage of their carpet, drapery, furniture and other personal property items. The insurance company relied on a policy exemption which was applicable to the dwelling and not to personal property. *Id.* at 235. The court found that the insurance company "wrongfully denied coverage under a policy exemption that was clearly inapplicable to this claim." *Id.* Given the failure to investigate, and its unreasonable coverage determination, Farmers was liable for bad faith. Thus, the facts and holding of *Fiscus* establish that the elements of bad faith are as this Court has set them out.

However, the following language appears in *Fiscus:*

> The district court also decided that Farmers was liable for breach of the implied covenant of good faith and fair dealing by the manner in which Farmers denied Fiscuses' claim without reasonable basis *and by reason on the insurance company's unprofessional claims investigative procedures.* There is sufficient evidence on the record for this court to conclude on appeal that the district court did not err in finding that Farmers committed a breach of its implied duty of good faith and fair dealing.

*Id.* at 235–36 (emphasis added). From the underscored language, one could infer that bad faith is broader than the unreasonable denial of a claim, i.e., that unprofessional claims investigation can constitute bad faith.

---

**7.** This heading and the following sentence are not designed to be a definition of bad faith as they omit the third element of bad faith (knowledge or awareness by the insurer of the lack of any reasonable basis to deny the claim) because this third element is not expressly listed in all of the bad faith cases as are the first two elements.

**8.** A formal denial is not necessary as a refusal to pay a claim can satisfy the first element of bad

faith. *See Pemberton,* 858 P.2d at 382; *Peterson,* 540 P.2d at 1071. This proposition is discussed more fully *infra* p. 1250 in addressing Pioneer's allegation that National Union took to long to decide Pioneer's claim. The Court simply uses "denial" as the first element of bad faith for brevity's sake.

However, for the reasons given below, the Court does not believe such a conclusion follows from the underscored language.

First, it was the district court, not Nevada's Supreme Court, which apparently found bad faith liability due in part to unprofessional claims investigative procedures. Nevada's Supreme Court simply stated that it was affirming the judgment. This situation could be analogous to the following: a trial judge excludes evidence on the grounds of hearsay; the appellate court finds that the evidence was not hearsay but affirms the exclusion because the evidence was unduly prejudicial. There is no indication in *Fiscus* that Nevada's Supreme Court adopted unprofessional claims investigative procedures as an act of bad faith.

Secondly, Nevada's Supreme Court would not likely broaden the scope of bad faith in such a casual manner without any discussion as to why bad faith now included elements beyond a knowing unreasonable denial by the insured.[9] The quoted section of the opinion above is the extent of the court's discussion of bad faith. The underscored language appears to be the first time an act other than an unreasonable denial was mentioned in the bad faith context. It seems unlikely that Nevada's high court would adopt a new element for bad faith in such unexplicit fashion.

Moreover, the district court could have meant that the unprofessional claims handling demonstrated the unreasonableness of the insurer's denial rather than constituted bad faith by itself. *See Hart*, 848 F.Supp. at 905 n. 4 (a failure to investigate is not bad faith but is relevant to whether the denial was reasonable).[10] Additionally and as previously stated, *Fiscus* did involve an unreasonable denial of a claim. Therefore, this Court finds nothing in *Fiscus* to indicate that bad faith involves more than the knowing unreasonable denial of a claim.

There is another potentially problematic sentence in *United Fire Ins. Co. v. McClelland*, 105 Nev. 504, 780 P.2d 193 (1989). Again, this Court notes first that the facts and holding of *McClelland* support the view that bad faith is the knowing unreasonable denial of a claim. *Id.* at 197 ("sufficient evidence exists to support the jury's determination that appellants [insurers] acted in bad faith *in denying Kenneth's [McClelland's] insurance claims*") (emphasis added).

However in *McClelland*, Nevada's Supreme Court stated that "a jury question on insurer's bad faith arises when relevant facts are in dispute or when facts permit differing inferences as to the *reasonableness of the insurer's conduct*." *Id.* (emphasis added) (citing *Duckett v. Allstate Ins. Co.*, 606 F.Supp. 728, 731 (W.D.Okla.1985)).[11]

There are several problems in interpreting this statement to mean that bad faith is broad enough to include the manner in which an insurer handles a claim. First, in talking of the reasonableness of the insurer's conduct, it is not clear that by "conduct" Nevada's Supreme Court meant the manner in which an insurer processes a claim. Nevada's Supreme Court in using the word "conduct" could have been referring to the insurance company's denial, i.e., "a jury question arises when facts permit differing inferences as to the reasonableness of the" denial, *McClelland*, 780 P.2d at 197. For the court did go on to hold that "sufficient evidence exist[ed] to support the jury's determination that appellants acted in bad faith *in denying Kenneth's [McClelland's] insurance claims*." *McClelland*, 780 P.2d at 197 (emphasis added). Reading "conduct" so as to mean denial makes the sentence consistent with the facts

---

9. The Court will use the term "knowing unreasonable denial" as a short-hand method of referring to the three elements of bad faith set out earlier. This short-hand phrase should not be viewed as the actual definition of bad faith as it does not fully describe the three elements of bad faith.

10. That improper investigation is not bad faith but evidence of an insurer's unreasonable denial is discussed more fully *infra* pp. 1248–49.

11. *McClelland* did not arrive at Nevada's Supreme Court pursuant to a grant of summary judgment. *McClelland* ended in a jury trial. The insurer appealed contending that the trial judge erred in giving a bad faith instruction because, due to an alleged novation of the insurance policy, the insurer's denial of the claim was reasonable. *McClelland*, 780 P.2d at 197.

and holding of *McClelland* and consistent with Nevada's other bad faith cases.[12]

Again, Nevada's Supreme Court would not likely change bad faith from the unreasonable denial of a claim to the manner in which an insurer handles a claim in such unexplicit fashion. It would be a sweeping change if Nevada's Supreme Court in *McClelland* intended bad faith to go beyond an unreasonable denial to include a wide variety of acts (any of which might be performed negligently) by the insurer which take place in the processing of a claim. It would also be significant if the court no longer required that a denial be knowingly unreasonable but required only an unreasonable or negligent action in handling the claim. However, there is no discussion indicating the court was broadening the scope of bad faith.

Thus, by the insurer's "conduct," the Supreme Court of Nevada in *McClelland* must have been referring to the insurer's denial of McClelland's claim.[13]

### 5. *Public Policy Concerns Do Not Require That Bad Faith Encompass Claim Practices Which are Governed by NRS 686A.310.*

As to the persuasive authority of Oklahoma or any other jurisdiction in which bad faith is broader than the apparent scope of bad faith in Nevada, this Court sees no policy need for bad faith to be broader than the three elements expressly announced by Nevada's Supreme Court. A potential plaintiff should not take umbrage at the fact that she could not assert a bad faith claim if an insurer covered her claim but handled the claim unreasonably or treated her in an atrocious manner. The insured would have a cause of action for such claim handling. However, the cause of action is a violation of 686A.310, not common law bad faith. Additionally, as discussed *infra* p. 1250, an award of punitive damages is possible for a violation of NRS 686A.310.

As 686A.310 authorizes a private cause of action, there is no need for bad faith to encompass those acts which violate NRS 686A.310. The Court also rejects the persuasive authority of other jurisdictions in which bad faith is broad enough to include the manner in which a claim is processed. Unlike Nevada, in some of these other states, an insured does not have a private cause of action for violations of the unfair claims practice statute. *See, e.g.,* Ariz.Rev.Stat.Ann. § 20–461(D) (no private cause of action for violation of Arizona's unfair claim practices act); *accord* Utah Code Ann. § 31A–26–303(5); *see also White v. Unigard Mut. Ins. Co.,* 112 Idaho 94, 730 P.2d 1014 (1986) (construing Idaho Code § 41–1329).[14] In such states then, an insured could not sue for negligent claims handling unless bad faith is broad enough to encompass such acts. *See, e.g., Deese v. State Farm Mut. Auto Ins. Co.,* 172 Ariz. 504, 838 P.2d 1265 (1992) (en banc) (bad faith applicable when insurer acts unreasonably toward insured, and denial of claim is not required). Nevada does not have such a problem in light of NRS 686A.310(2).

Certainly bad faith and NRS 686A.310 are not worlds apart, and some cases may demonstrate that there could be an overlap of the two causes of action, i.e., the same conduct

---

**12.** Using the more encompassing word "conduct" to refer to a particular act is not so strange. A court may refer to a defendant's "conduct" rather than the particular crime, e.g., burglary, or tort, e.g., intentional infliction of emotional distress.

**13.** In *Duckett v. Allstate Ins. Co.,* 606 F.Supp. 728 (W.D.Okla.1985), from which the *McClelland* court took the problematic sentence, the Oklahoma court may have indeed intended "conduct" to refer to the manner in which a claim is handled. However, an examination of *Duckett* reveals that Oklahoma bad faith law (unlike Nevada) is explicitly broader than just the knowing unreasonable denial of a claim. *See Duckett,* 606

F.Supp. at 731 (bad faith involves the reasonableness of the manner in which the insurer deals with the insured). Nevada's Supreme Court has never stated that bad faith involves conduct other than the denial of a claim without any reasonable basis and an awareness of such lack of basis. Thus, *Duckett* 's proposition as to when a jury question arises in a bad faith action is accurate for Oklahoma bad faith law but not for Nevada bad faith law.

**14.** Recall that NRS 686A.310 did not originally contain a provision for a private cause of action and was intended to be a regulatory means for Nevada's Insurance Commissioner.

may support an NRS 686A.310 claim and a bad faith claim. However, the two claims are separate causes of action governed by different legal standards. *See Hart,* 848 F.Supp. at 905 n. 4 ("a failure to investigate is a violation of the statute giving rise to appropriate damages, where under the common law, a failure to investigate merely impacts the reasonableness of the denial"). That is, some acts which violate NRS 686A.310 may be evidence that an insurer's denial was unreasonable, but the statutory violations do not themselves constitute bad faith. This distinction will become more evident as the Court addresses the merits of National Union's Motion for Summary Judgment and Pioneer's allegations.

### D. National Union is Entitled to Summary Judgment on the Issue of Bad Faith.

■ Based on the foregoing discussion, Nevada's definition of bad faith is (1) an insurer's denial of (or refusal to pay) an insured's claim (2) without any reasonable basis and (3) the insurer's knowledge or awareness of the lack of any reasonable basis to deny coverage, or the insurer's reckless disregard as to the unreasonableness of the denial. *American Excess Ins. Co.,* 729 P.2d at 1354; *Falline,* 823 P.2d at 891.

In the present case, element (1) is obviously met as National Union denied Pioneer's claim in the Fall of 1992 shortly after Pioneer commenced this action.

■ As to element (2), the Court finds that as a matter of law, National Union had a reasonable basis to deny coverage. After investigation Pioneer's claim, National Union arrived at the conclusion that the cause of the chlorine leak was corrosion, an excluded peril. As this Court previously stated in earlier summary judgment proceedings dealing with liability, corrosion was certainly involved in the chain of events leading to the chlorine leak. (Order # 174.) This Court denied each party's motion for summary judgment largely because case law established that the determination of the proxi-

mate cause of Pioneer's loss is a question for the trier of fact. During the coverage summary judgment proceedings, the Court also learned that some cases support Pioneer while other cases support National Union. This case involves a difficult causation issue and a legitimate dispute as to that issue. The Court finds that as a matter of law National Union had a reasonable basis to deny Pioneer's claim.[15] Thus, element (2) of bad faith is missing, and this is fatal to Pioneer's bad faith claim. *See American Excess Ins. Co.,* 729 P.2d at 1355 ("[b]ecause we conclude that AEI's [insurer's] interpretation of the [insurance] contract was reasonable, there is no basis for concluding that AEI acted in bad faith").

The Court having found that National Union had a reasonable basis to deny coverage, neither can Pioneer satisfy element (3) of bad faith, an awareness by National Union that it had no reasonable basis to deny coverage. Moreover, Pioneer has produced no evidence tending to show such awareness or knowledge on the part of National Union.

Consequently, while a jury may find that Pioneer's loss is ultimately covered, no reasonable jury could find that National Union was knowingly without a basis to deny Pioneer's claim. Under the facts of this case, National Union cannot be held liable for bad faith.

Pioneer's allegations and attempts to show issues of fact do not change the bad faith analysis above. However, some of Pioneer's allegations are material to the alleged statutory violations of NRS 686A.310.

### E. National Union is Not Entitled to Summary Judgment on the NRS 686A.310 Claims.

National Union has not established the absence of genuine issues of fact as to Pioneer's NRS 686A.310 claims.

■ Again, Pioneer alleges the following instances of wrongful conduct: (1) National Union failed to promptly provide Pioneer,

**15.** If the Court's conclusion that National Union had a reasonable basis appears to be in summary fashion here, it is because Order # 174 contains a lengthy analysis demonstrating (although perhaps not explicitly stating) that National Union had a reasonable basis to deny coverage.

within a reasonable time after proofs of loss were submitted by Pioneer, with a reasonable explanation for the denial of Pioneer's claim; (2) National Union failed to provide coverage to Pioneer; (3) National Union adopted an arbitrary and capricious interpretation of the corrosion exclusion clause; (4) National Union failed to adequately monitor the claim as it was, or was not, being processed; (5) National Union failed to adequately investigate all possible grounds of coverage, including Pioneer's "rag theory"; and (6) National Union failed to make a prompt coverage determination.[16]

Most of these allegation are material to NRS 686A.310 but not to common law bad faith. For example, allegation (1), even if proven true, would not satisfy the definition of bad faith. Bad faith is the denial of a claim without any reasonable basis and an awareness by the insurer that it lacks any reasonable basis to deny the claim. *American Excess Ins. Co.*, 729 P.2d at 1354. Allegation (1) which charges that National Union failed to provide an explanation for the denial within a reasonable time is not an element of bad faith. However, allegation (1) tracks the language of NRS 686A.310(1)(n) and is therefore material to Pioneer's statutory claim for unfair claim practices.

Similarly allegation (2), failing to provide coverage, is not itself bad faith. Simply denying the claim may constitute a breach of the insurance contract, but it does not by itself constitute the separate tort of bad faith. While denial of a claim is relevant to bad faith to the extent that it satisfies the first element of bad faith, allegation (2) does nothing to support the second and third elements of bad faith which the Court has found to be absent here.

Allegation (2) could in general be relevant to NRS 686A.310(1)(e) (failing to effectuate settlements of claims in which liability of the insurer has become reasonably clear). However, as can be seen from the Court's previous Order # 174, the liability of National Union has never been reasonably clear. Thus, allegation (2) does nothing to support Pioneer's NRS 686A.310 claim.[17]

In allegation (3), Pioneer asserts that National Union adopted an arbitrary and capricious interpretation of the corrosion exclusion. In general such an allegation is relevant to bad faith because it impacts the reasonableness of an insurer's denial. However, Pioneer cannot succeed in proving this allegation. In the Court's previous Order # 174, the Court rejected Pioneer's contention that National Union's interpretation of the Policy was arbitrary and capricious. National Union's position was not arbitrary but reasonable. Therefore, although an allegation such as allegation (3) is in general relevant to the reasonableness, in this case allegation (3) is without merit because the Court has found that National Union's Policy interpretation was reasonable as a matter of law. Having been rejected as a matter of law, neither can allegation (3) form any basis for recovery under NRS 686A.310.

In allegation (4), Pioneer contends that National Union failed to adequately monitor Pioneer's claim. Pioneer asserts that during depositions two National Union adjustors disagreed as to when Pioneer's claim was transferred from one adjustor to the other. Pioneer contends that a Mr. Waidler, who had been handling Pioneer's claim thought that the claim was transferred from him to a Mr. Smith in the late fall of 1992. Pioneer has some evidence that Mr. Smith did not know of Pioneer's claim until Fall of 1993.

Pioneer's allegation (4) is material to NRS 686A.310 but not bad faith. This alleged failure to monitor the claim occurred after the act of bad faith, i.e., the denial in November 1992. Thus, this failure to monitor the claim during the time period alleged is not material to the reasonableness of National Union's denial. However, this alleged failure to monitor the claim may constitute a violation of 686A.310 and is therefore material to that claim.

---

16. The first two allegations are contained in Pioneer's Second Amended Complaint (# 128 at 6.), while the last four allegations are contained in Pioneer's Opposition (# 189).

17. Allegation (2), denial of Pioneer's claim, is of course relevant to Pioneer's First Claim for Relief (declaratory relief). Pioneer's First Claim for Relief was addressed in Order # 174 which denied each party's motion for summary judgment.

In allegation (5), Pioneer asserts that National Union failed to adequately investigate Pioneer's claim including Pioneer's rag theory. This allegation is relevant to NRS 686A.310(1)(c) ("failing to adopt and implement reasonable standards for the prompt investigation and processing of claims"). Generally an allegation of this kind would also be relevant to a bad faith claim because failure to investigate impacts the reasonableness of an insurer's denial of a claim. *See Hart,* 848 F.Supp. at 905 n. 4; *see also Falline,* 823 P.2d at 891 (bad faith is "'the absence of a reasonable basis for denying benefits ... and the defendant's knowledge or *reckless disregard* of the lack of a reasonable basis for denying the claim'") (citations omitted). A complete failure to investigate would be evidence of an insurer's reckless disregard as to the reasonableness of its denial. However, the failure to investigate is not itself bad faith. *See Hart,* 848 F.Supp. at 905 n. 4.

Moreover, in the present case it is undisputed that National Union did investigate Pioneer's loss. National Union sent an investigator to Pioneer's plant the day after the chlorine leak. After an initial investigation, National Union retained Thielsch Engineering Associates ("Thielsch") to assess whether corrosion caused the chlorine leak. National Union and Thielsch requested information and documents from Pioneer and the engineering firms Pioneer hired. Thus, National Union investigated Pioneer's claim and concluded that Pioneer's loss was caused by corrosion, an excluded peril.

Pioneer's bone of contention is not that National Union completely failed to investigate Pioneer's claim, but that National Union did not investigate all possible grounds of coverage such as the rag theory. Even if true, this allegation does not support a finding of bad faith in this case. So long as an insurer had a reasonable basis to deny coverage, the insurer cannot be held liable for bad faith. *See American Excess Ins. Co.,* 729 P.2d at 1355. National Union investigated

this loss and concluded that corrosion was the cause of the loss. Nevada's bad faith cases do not support Pioneer's view that an insurer who has made a legitimate investigation of a claim must continuously track down subsequent theories of coverage proffered by the insured.[18] A court will assess such legitimate disputes as to coverage. In *Fiscus,* the insurer denied coverage on an exclusion which Nevada's Supreme Court found to be "clearly inapplicable." *Fiscus,* 725 P.2d at 235. The insurer had made a brief visit to the Fiscuses' house and based on such visit denied the Fiscuses' claim. The insurer clung to a clearly inapplicable exclusion despite information given by the insured, and conducted little investigation. Implicit in the courts reasoning is that a good faith investigation would likely have lead the insurer to a correct coverage determination. As National Union investigated Pioneer's claim and reasonably concluded that the cause of Pioneer's loss was corrosion, the alleged failure to explore the rag theory is not material to Pioneer's claim of bad faith.[19]

Although National Union's alleged failure to explore the rag theory does not demonstrate an unreasonable denial by National Union, the evidence may warrant a finding by the jury that under NRS 686A.310(1)(c) National Union ought to have assessed the rag theory (assuming National Union did not assess it). The evidence could warrant a finding that National Union did not "adopt and implement reasonable standards for the prompt investigation" of Pioneer's claim. NRS 686A.310(1)(c). Thus, a genuine issue of fact exists as to Pioneer's claim under NRS 686A.310(1)(c). However, National Union's investigation was sufficient to support a denial of Pioneer's claim so as to preclude a finding of bad faith.

Finally, in allegation (6), Pioneer contends that National Union failed to make a prompt coverage determination. This allegation tracks the language of NRS 686A.310(1)(d). The Court finds that the facts of this case and the legal standard of NRS 686A.310(1)(d)

---

**18.** There is conflicting evidence as to when Pioneer communicated the rag theory to National Union.

**19.** The Court also notes that it did not accept as a matter of law Pioneer's rag theory in earlier summary judgment proceedings. (*See* Order # 174.)

preclude summary judgment in favor of National Union. The evidence at trial may warrant a jury finding that National Union should have made a decision on coverage sooner than it did.

However, even if National Union violated NRS 686A.310(1)(d), the violation does not constitute bad faith. Here allegation (6) (the alleged delay) is material only to the first element of bad faith (denial of the claim). That is, at some point in time a failure to affirm or deny coverage could in effect constitute a denial. In *Pemberton* and *Peterson* the court stated that bad faith occurs when a insurer "refuses 'without proper cause' to compensate the insured for a loss covered by the policy." *Pemberton,* 858 P.2d at 382 (quoting *Peterson,* 540 P.2d at 1071). For example if an insurer without proper cause did not affirm or deny coverage for five years, the delay should constitute the denial prong of bad faith. In other words, an insurer should not be able to escape an otherwise valid bad faith claim on the technical basis that it never officially denied coverage. Thus, an official denial is not necessary to satisfy the first prong of bad faith. At any rate, this similarity of denial and refusal to pay for purposes of the first element of bad faith makes no difference in this case. National Union did deny Pioneer's claim, and the Court in analyzing the bad faith claim treated the denial prong as having been satisfied.[20]

Thus, the present case involves a legitimate coverage dispute. Accordingly, National Union is entitled to its day in court on such an issue without facing a claim for bad faith simply because it disagrees with Pioneer. National Union had a reasonable basis to deny Pioneer's claim. The Court finds as a matter of law that National Union is not liable for bad faith. Furthermore, Pioneer has not established a dispute as to any fact which is material to the claim of bad faith. Accordingly the Court will grant National Union's summary judgment request as to Pioneer's Third Claim for Relief based on bad faith.

Pioneer has established some factual issues as to its statutory unfair practice claim under NRS 686A.310. Consequently, the Court will deny National Union's request for summary judgment as to the NRS 686A.310 claim embodied in Pioneer's Second Claim for Relief.[21]

### F. *National Union is Entitled to Summary Judgment on the Issue of Punitive Damages.*

National Union also requests summary judgment on the issue of punitive damages. National Union asserts that the conduct justifying an award of punitive damages requires a higher level of culpability than that of bad faith. Thus, according to National Union, if it is not liable for bad faith, then it cannot be liable for punitive damages.

However, bad faith is not a prerequisite for punitive damages. Nevada law authorizes an award of punitive damages "for the breach of an obligation not arising from contract, where . . . the defendant has been guilty of oppression, fraud or malice, express or implied." NRS 42.005(1).

NRS 686A.310 imposes statutory duties on insurers, i.e., noncontractual duties imposed by law. Theoretically, if an insurer violates a provision of NRS 686A.310 and if its conduct involves oppression, fraud, or malice, a trier of fact could award punitive damages.

Practically however, the Court has difficulty constructing a factual situation where an

---

20. In a case where no official denial had occurred, a court would simply substitute refusal to pay for denial. An insurer would then be liable for bad faith if it did not have a reasonable basis for refusing to pay and had knowledge or awareness of the lack of any reasonable basis for refusing to pay the claim. An on-going good faith investigation should be a proper cause for refusal to pay (although it would not justify a denial as the investigation is not complete). Here, National Union had a reasonable basis for withholding coverage to Pioneer. National Un-

ion initially found that a question as to coverage existed. National Union then went on to investigate the accident at Pioneer's plant, and that investigation resulted in National Union's conclusion to deny Pioneer's claim.

21. As Pioneer's NRS 686A.310 claim is still viable, Pioneer may offer evidence at trial supporting any of the provisions it feels are applicable. Pioneer is not bound by this Court's recitation of the subsections the Court discerned to be applicable. *See supra* p. 1242.

insurer who violated the statute could have done so with an oppressive or malicious intent yet not denied, or refused to pay, the claim. Oppression means "'a conscious disregard for the rights of others which constitute[s] an act of subjecting plaintiffs to cruel and unjust hardship.'" *Ainsworth v. Combined Ins. Co. of America*, 104 Nev. 587, 763 P.2d 673, 675 (1988) (citations omitted). Nevada's Supreme Court has stated that malice involves actual hatred or ill-will, or the desire to successfully injure, vex, annoy or harass. *Craigo v. Circus–Circus Enterprises, Inc.*, 106 Nev. 1, 786 P.2d 22 (1990); *but see Granite Constr. Co. v. Rhyne*, 107 Nev. 651, 817 P.2d 711 (1991) (upholding punitive damage award based on defendant's conscious disregard for known safety procedures).[22] It is difficult to conceive a situation where an insurer would act with such ill-will toward an insured or subject an insured to a cruel and unusual hardship and yet not deny or refuse to pay the claim.[23]

At any rate the Court need not decide such a hypothetical situation. For the Court finds that no facts exist here to support an award of punitive damages under NRS 42.005. Thus, the Court does not rest its decision as to punitive damages on National Union's argument that summary judgment for an insurer as to bad faith precludes an award of punitive damages.[24]

Pioneer has shown no issue of fact as to the punitive damages request. There is nothing to indicate that National Union acted with malice or oppression.[25] An analysis of *Ainsworth*, 763 P.2d 673, cited heavily by Pioneer, demonstrates why punitive damages are not justified in this case.[26] In *Ainsworth*, the plaintiff suffered a stroke and lapsed into a coma for a week. The plaintiff was completely disabled for the following six months. During the six months, the plaintiffs wife attempted to collect benefits under two accident policies of the defendant. The defendants' agents had instructed the Ainsworths that the policies protected against "any conceivable accident." *Id.* at 674. After the defendant's first refusal to pay benefits, a salesman advised Mrs. Ainsworth to resubmit her claim. Mrs. Ainsworth submitted letters from doctors establishing that her husband's stroke occurred as a result of an accident which occurred during a medical procedure. Desperate for medical payments,

---

**22.** *Granite*'s possible lessening of the conduct required to constitute malice does not affect this case as National Union's conduct did not involve the conscious disregard of known safety procedures.

**23.** This problematic situation of course would not change if bad faith were viewed as broad enough to encompass claims handling procedures. The assumed situation involves improper claims handling, yet the insurer paid the claim or had a reasonable basis not to pay it. If such improper claims handling were subject to a bad faith action, only the name of the cause of action for improper claims handling would have changed. One would still be left to decide if an insurer could act maliciously or oppressively although it paid the claim or had a proper basis not to pay the claim. For a finding of bad faith does not automatically entitle a plaintiff to punitive damages. *See Peterson*, 540 P.2d 1070 (finding bad faith but denying punitive damages). Thus, this opinion should not be construed as a win or loss for insurers or insureds. Rather, it is an attempt to clarify causes of action which understandably have confused more than a few persons. As the *Hart* court said when it drew distinctions between NRS 686A.310 and common law bad faith, "[t]he Court does not expect the ramifications of its decision on this issue to be far reaching." *Hart*, 848 F.Supp. at 905 n. 5.

The Court does note however that the recovery caps on punitive damages are not applicable for "[a]n insurer who acts in bad faith regarding its obligations to provide insurance coverage." *See* NRS 42.005. The Court need not decide here the Nevada legislature's intent as to the scope of this exception to the recovery caps.

**24.** The Court also notes that Pioneer did not make a claim for punitive damages in its Second Claim for Relief based on NRS 686A.310. Pioneer's punitive damage claim and corresponding allegations appeared in its Third Claim based on common law bad faith. Nevertheless, the Court finds that there has been no conduct by National Union which would warrant an award of punitive damages.

**25.** Pioneer has not contended that National Union acted fraudulently.

**26.** Incidentally, Pioneer cites *Ainsworth* frequently as authority that certain acts constitute bad faith. Although the insurance company committed bad faith, the issue before the *Ainsworth* court was the award of punitive damages, not whether a particular act constituted bad faith. *See Ainsworth*, 763 P.2d 673.

**1252**

Mrs. Ainsworth submitted her claim five times over an eighteen-month period alerting the defendant that the stroke occurred from an accident. The insurer without obtaining accurate and complete medical records or considering the documents provided by Mrs. Ainsworth clung to its restrictive interpretation of the term "accident" despite its representations that "accident" covered any conceivable accident. The insurer also knew of the Ainsworths' desperate situation. With such knowledge, inadequate investigation, and its clinging to a restrictive interpretation of an ambiguous term (which interpretation was at odds with previous representations by the insurer), the insurer acted in conscious disregard of the Ainsworths' rights. *Id.* at 675–76.

 There is nothing in the record to indicate any actions by National Union approaching the oppressive conduct which occurred in *Ainsworth.* National Union alerted Pioneer that a potential problem existed regarding coverage. National Union conducted an investigation which resulted in a 454 page report on the loss. National Union repeatedly sought documents from Pioneer and assessed such information in determining the cause of Pioneer's loss. Moreover, National Union's decision to deny coverage was reasonable, even if a jury ultimately concludes that it was erroneous. Thus, there is no issue of fact material to Pioneer's request for punitive damages. As a matter of law, National Union has not acted oppressively or maliciously.

### CONCLUSION

Bad faith, NRS 686A.310, and punitive damages involve three separate issues. Judgment as to one of these issues does not necessarily decide the other two. Under Nevada law and the facts of this case, no reasonable trier of fact could find National Union liable for bad faith. As a matter of law National Union had a reasonable basis to deny coverage. However, genuine issues of fact do exist as to whether National Union violated a provision of NRS 686A.310. The Court also finds as a matter of law that National Union did nothing which would justify and award of punitive damages.

Accordingly, good cause appearing,

**IT IS HEREBY ORDERED** that Defendant National Union's Motion for Partial Summary Judgment (# 164, # 165, # 166) is **GRANTED** as to Plaintiff Pioneer's Third Claim for Relief for bad faith and **GRANTED** as to Plaintiff Pioneer's request for punitive damages.

**IT IS FURTHER ORDERED** that Defendant National Union's Motion for Partial Summary Judgment (# 164, # 165, # 166) is **DENIED** as to Plaintiff Pioneer's Second Claim for Relief for unfair claim practices in violation of NRS 686A.310.